UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
_____ DIVISION

| | |
|---|---|
| AMERICAN AIRLINES, INC., <br><br> Plaintiff, <br> v. <br><br> TRAVELPORT LIMITED, et al., <br><br> Defendants | Miscellaneous Docket No. <br> _____ <br><br> Civil Action No. 4:11-cv-00244-Y <br> (Pending in U.S.D.C. for the N.D. Tex.) |

**NON-PARTY JOHN STOW'S MEMORANDUM IN SUPPORT OF MOTION TO
QUASH AMERICAN AIRLINES'S SUBPOENA AND
<u>FOR ATTORNEYS' FEES AND COSTS</u>**

Yesterday, a federal holiday, American Airlines, Inc. ("American") sent counsel for John Stow a subpoena[1] for a deposition *tomorrow*, in a case that has been pending for almost two years between American Airlines, Travelport and others in the Northern District of Texas (the "Texas Federal Action").[2] American apparently chose tomorrow because that is the day that discovery is ordered to close in the Texas Federal Action. It later confirmed as much, admitting that the date was not a "real date" but rather a placeholder, apparently assuming it could disregard the Northern District of Texas' scheduling order and conduct the deposition later so long as it was nominally noticed inside the discovery window.

The impropriety of the timing of the notice pales, however, in comparison to the needless burden that American seeks to put on Mr. Stow by subjecting him to a deposition at all. On May 24, 2012, American deposed Mr. Stow in a litigation involving the identical issues in Texas State court (the "Texas State Action").[3] American admits that it is satisfied with the record it adduced in the first deposition, but is apparently concerned that the federal rules of civil procedure may not allow American to use the first deposition in the Texas Federal Action. That itself is ironic because American chose to split its litigation into two actions, isolating Sabre in the Texas State Action while pursuing parallel federal antitrust claims, based on the same facts, against Travelport and Sabre in the Texas Federal Action. American could and should have cross-noticed Mr. Stow's original deposition in both cases.

---

[1] *See* Plaintiff's Notice of Intent to Take the Videotaped Deposition of John S. Stow and Subpoena to Testify in a Civil Action issued by American Airlines on February 18, 2013 (Submitted as Exhibit A to the accompanying Declaration of Larry C. Work-Dembowski In Support Of John Stow's Motion To Quash American Airlines's Subpoena And For Attorneys' Fees And Costs dated February 19, 2013 ("Work-Dembowski Declaration")). Citations to "Exhibits" herein are to Exhibits to the Work-Dembowski Declaration.

[2] *American Airlines, Inc. v. Travelport Limited, et al.*, No. 4:11-cv-00244-Y (N.D. Tex.).

[3] *American Airlines, Inc. v. Sabre Inc., et al.*, No. 067-249214-10 (67th Judicial District, Tarrant County, Texas).

1

At any rate, American had every opportunity and incentive to ask Mr. Stow any question it would ask him in the proposed second deposition, and American had every opportunity and incentive to ensure that all of the parties in this proceeding attended the first deposition. It apparently did not do so in an effort to avoid the deposition limits in the Texas Federal Action. Having made that choice, it must live with the consequences, not burden Mr. Stow with a second deposition.

Mr. Stow accordingly hereby submits this memorandum in support of his motion to quash the subpoena served by American for a deposition in this District, and for attorneys' fees and costs.

## STATEMENT OF THE FACTS

The Texas Federal Action in support of which the subpoena was issued involves claims brought by American against three groups of defendants – the Sabre group of companies,[4] the Travelport group of companies,[5] and Orbitz, a partial subsidiary of Travelport,[6] for alleged violations of the federal antitrust laws based on their behavior in connection with the distribution of airline tickets.[7] In the Texas State Action, American made essentially identical allegations and brought parallel state antitrust claims against Sabre.[8] American has settled its claims against

---

[4] American sued the following Sabre entities: Sabre Inc., Sabre Holdings Corp., and Sabre Travel International Ltd., d/b/a Sabre Travel Network. *See* Docket Sheet in the Texas Federal Action (Exhibit H).

[5] American sued the following Travelport entities: Travelport Limited and Travelport, LP d/b/a Travelport. *See id.*

[6] American sued Orbitz Worldwide, LLC d/b/a Orbitz. *See id.*

[7] Sabre and Travelport each operate complex computer systems, known as Global Distribution Systems or "GDSs," through which some travel providers, including American Airlines, choose to distribute their products (e.g. flight bookings). GDSs enable comparison shopping for flights and other travel products, such as hotel rooms and rental cars.

[8] *American Airlines, Inc. v. Sabre Inc., et al.*, No. 067-249214-10 (67th Judicial District, Tarrant County, Texas).

2

Sabre, and those claims have been dismissed with prejudice in both proceedings.[9] American continues to pursue its claims against Travelport and Orbitz, however, in the Texas Federal Action. The vast majority of the pleadings in the Texas Federal Action and the Texas State Action have been filed under seal, and their content is not known to Mr. Stow, but from available information and the questioning of Mr. Stow at his first deposition, it seems that Mr. Stow is of interest to American in relation to a few communications Mr. Stow had with Sabre and, separately, with Travelport, after Mr. Stow retired from Sabre, which American apparently will seek to contend provide evidence of some sort of antitrust conspiracy.

On May 24, 2012, American, represented by the same law firm that is representing American in respect of the instant subpoena, deposed Mr. Stow pursuant to a North Carolina state subpoena issued in connection with the Texas State Action.[10] In that deposition, American asked Mr. Stow questions related to Travelport, including questions based on material produced by Travelport.[11] Before that deposition, Mr. Stow's consulting company, Stow Consulting LLC, produced documents to American in response to a document subpoena,[12] and since that deposition neither Mr. Stow nor his company has produced any additional documents to American (nor have any been requested). There are thus no documents from Mr. Stow about which American could ask questions in the second deposition that were not available in the first.

Discovery in the Texas Federal Action has been underway since long before Mr. Stow's deposition. The Northern District of Texas issued an initial scheduling order on August 1, 2011,

---

[9] *See* Agreed Order Of Dismissal With Prejudice issued in the Texas Federal Action on January 9, 2013 (Exhibit B); Order of Dismissal With Prejudice issued in the Texas State Action on December 28, 2012 (Exhibit C).

[10] *See* Subpoena issued May 18, 2012 (Exhibit D).

[11] Work-Dembowski Declaration ¶ 6.

[12] *See* Subpoena issued March 16, 2012 (Exhibit E).

3

which ordered the close of all fact discovery by May 15, 2012.[13] In that order, the court also ordered that: "All discovery must be completed by the ordered date. Parties shall serve discovery requests with sufficient lead time to permit opponents to serve timely responses prior to the discovery deadline."[14] The court later extended the close of discovery and, on January 9, 2013 – in response to a joint request submitted by American and the remaining defendants – ordered that "All depositions must be completed no later than **February 20, 2013**."[15] So far as the docket reveals, no party has sought to extend those deadlines further or to alter the Northern District of Texas' mandate that "all discovery must be completed by the ordered date."[16]

In December 2012, American "request[ed] to take Mr. Stow's deposition in January [2013],"[17] this time under the auspices of the Texas Federal Action. No specific dates were discussed or reserved, and American did not issue a subpoena for Mr. Stow's deposition in January. On February 12, 2013, American again contacted Mr. Stow's counsel and stated that American was satisfied with the testimony it had obtained in Mr. Stow's first deposition.[18] American confirmed that it would not seek a second deposition of Mr. Stow if Travelport would agree that Mr. Stow's first deposition could be used in the Texas Federal Action.[19] A few days later, on Saturday, February 16, 2013, American's counsel reported that they had been unable to gain Travelport's agreement to the unlimited use of Mr. Stow's prior deposition testimony but

---

[13] Initial Scheduling Order issued in the Texas Federal Action at 2 ¶ 7 (Exhibit F).

[14] *Id.* at n.4.

[15] Order Granting Unopposed Motion to Stay Party Discovery And Extending Current Deadlines And Request For Expedited Treatment issued in the Texas Federal Action ¶ 2(d) (bold in original) (Exhibit G).

[16] *See* Docket Sheet for the Texas Federal Action (Exhibit H).

[17] E-mail from Allison Brown, Esq., Weil Gotshal & Manges, to Larry Work-Dembowski, Esq., Cleary Gottlieb Steen & Hamilton LLP (Dec. 18, 2012) (Exhibit I).

[18] E-mail exchange between Allison Brown, Esq., Weil Gotshal & Manges, and Larry Work-Dembowski, Esq., Cleary Gottlieb Steen & Hamilton LLP (Feb. 12, 2013) (Exhibit J).

[19] *Id.*

4

again confirmed "American would be satisfied to use his prior deposition."[20] Two days later, on Monday, February 18, 2013 (Washington's Birthday), by e-mail sent around 1:00 p.m., American sent the present subpoena.[21] After sending the subpoena, American confirmed that it did not actually intend to take the deposition on February 20, but had simply put that date as a placeholder,[22] apparently to create the appearance that it was complying with the Northern District of Texas' scheduling order.[23]

## ARGUMENT

### I. The Court Should Quash The Subpoena Because Repeating The Deposition Would Be An Undue Burden On Mr. Stow

This Court must quash the subpoena because American has failed to meet its obligation to "take reasonable steps to avoid imposing undue burden or expense on [Mr. Stow]." Fed. R. Civ. P. 45(c)(1). The most reasonable step that American could have and should have taken was to issue a concurrent subpoena in the Texas Federal Action in May 2012 so that Mr. Stow's deposition would have been "cross-noticed" in both proceedings. Mr. Stow should not be forced to bear the burden and expense of a second deposition solely because American chose not to take that simple step. American did not do this, presumably because it would have required

---

[20] E-mail from Allison Brown, Esq., Weil, Gotshal & Manges, to Steven Kaiser, Esq. & Larry Work-Dembowski, Esq., Cleary Gottlieb Steen & Hamilton LLP (Feb. 16, 2013) (Exhibit K).

[21] E-mail from Allison Brown, Esq., Weil Gotshal & Manges, to Larry Work-Dembowski, Esq., Cleary Gottlieb Steen & Hamilton LLP (Feb. 18, 2013) (Exhibit L). While Mr. Stow had agreed in principal that his counsel would accept service of any subpoena, American chose to serve the subpoena by e-mail on February 18. That service was insufficient under the plain language of the Rules because it failed to "tender[] the fees for 1 day's attendance and the mileage allowed by law" as required by Fed. R. Civ. P. 45(b)(1). American delivered a hard copy of the subpoena to Mr. Stow's counsel on February 19, shortly after noon. That delivery also did not include the required witness fees.

[22] Work-Dembowski Declaration ¶ 17.

[23] Mr. Stow is currently on vacation in California. Work-Dembowski Declaration ¶ 15. He is not scheduled to return home to North Carolina until late in the evening on March 1. *Id.* He is scheduled to travel out of state again for business from March 5 through March 7. *Id.*

5

American to use one of its depositions in the Texas Federal Action, which at the time American did not want to do.

It is also clear that American does not actually seek new information. American has confirmed in writing twice that it is "satisfied" with the testimony elicited in Mr. Stow's first deposition.[24] American appears to feel justified in forcing Mr. Stow through another deposition based solely on Travelport's statement that it objects to the use of the testimony from the first deposition against it, to the extent such use would not be permitted under the Federal Rules of Civil Procedure.[25] Of course, this is the precise issue that American could easily have avoided by cross-noticing the deposition with the first deposition in May 2012. There can be no dispute that American had the opportunity and – except for wanting to avoid using a deposition in the Texas Federal Action – the incentive to do so. It already had all of Mr. Stow's documents, it already had the documents from Travelport about which it planned to ask Mr. Stow questions, and it has confirmed that it is "satisfied" that the issues it raised with Mr. Stow encompassed all it desired from him for the Texas Federal Action. American likewise could have taken the issue to Judge Means, the judge presiding over the Texas Federal Action, and sought an order allowing the use of the deposition. At any rate, American has no one to blame but itself for the consequences, whatever they may be, of Travelport's reservation of rights.

Where a party issues a subpoena that "subjects a person to undue burden," Rule 45(c)(3)(A)(iv) dictates that the Court "must quash" that subpoena. American's actions here would subject Mr. Stow to at least the undue burdens of preparing for a deposition a second time,

---

[24] E-mail from Allison Brown, Esq., Weil Gotshal & Manges, to Larry Work-Dembowski, Esq., Cleary Gottlieb Steen & Hamilton LLP (Feb. 12, 2013) (Exhibit J); E-mail from Allison Brown, Esq., Weil Gotshal & Manges, to Larry Work-Dembowski, Esq., Cleary Gottlieb Steen & Hamilton LLP (Feb. 16, 2013) (Exhibit K).

[25] *See* E-mail from Allison Brown, Esq., Weil Gotshal & Manges, to Larry Work-Dembowski, Esq., Cleary Gottlieb Steen & Hamilton LLP (Feb. 16, 2013) (Exhibit K). American does not appear to have approached Orbitz, the other remaining defendant in the Texas Federal Action, about this issue.

incurring attorney costs for defending a deposition a second time, and attending and testifying a second time. This is improper. As the Western District of North Carolina has specifically held in the comparable situation where a party sought a repeat deposition under Rule 30, "[d]irecting [the deponent] to appear and submit to examination once more, for the sole purpose of allowing [the party] to inquire about a topic that has already been fully exhausted, would amount to undue burden." *In re Polyester Staple Antitrust Litig.*, MDL No. 3:03CV1516, 2007 WL 1232223, at *2 (W.D.N.C. Apr. 25, 2007) (granting motion to quash subpoena on previously deposed third party) ("*In re Polyester Staples*"). While Rule 30's proscription against second depositions without leave of court is not directly in play here, that is only because American chose to pursue its identical claims against Sabre and Travelport in two different forums and then chose not to notice Mr. Stow's first deposition in both cases. The situations are directly analogous, and the Western District's reasoning in *In re Polyester Staples* is directly applicable to evaluating undue burden under Rule 45. American had every opportunity to question Mr. Stow and made use of that opportunity, and there is no justification for making Mr. Stow sit again for the sole purpose of allowing American to inquire again about topics about which it admits his prior testimony was already "satisf[actory]."

Furthermore, making Mr. Stow sit for a deposition on the time schedule that American has imposed would require Mr. Stow to interrupt his vacation and incur the costs of travelling back to North Carolina from California on exceptionally short notice. Because of the impracticality of making such nearly instantaneous travel arrangements, Mr. Stow has not returned to North Carolina in response to the subpoena and will not attend on February 20.[26]

---

[26] As noted, American has confirmed that the February 20 date was not a real date, and Mr. Stow's counsel has informed counsel for American, Travelport, and Orbitz that Mr. Stow would not attend on that date. *See* Work-Dembowski Declaration ¶ 16.

7

## II. The Court Should Quash The Subpoena Because American Failed To Allow A Reasonable Time To Comply

American issued its subpoena on a federal holiday and allowed Mr. Stow all of one business day to respond. This is insufficient. Rule 45(c)(3)(A)(i) states that the Court "must quash . . . a subpoena that fails to allow a reasonable time to comply." Courts have held that even longer periods of notice in subpoenas were unreasonable. *See, e.g., TRI Inv., Inc. v. Aiken Cost Consultants, Inc.*, No. 2:11-cv-00004, 2011 WL 5330295, at *2 (W.D.N.C. Nov. 7, 2011) ("Six total days and four business days is not a reasonable time to comply with a subpoena and notice of deposition"); *Brown v. Hendler*, No. 9-cv-04486, 2011 WL 321139, at *2 (S.D.N.Y. Jan. 31, 2011) (holding nine days was not reasonable time to comply with deposition subpoena and noting that "Federal courts have also found compliance times of eight and seven days not to be reasonable"); *Nelson v. Granite State Ins. Co.*, No. 08-cv-01165, 2010 WL 908845, at *1 (W.D. Okla. Mar. 10, 2010) (quashing subpoena that gave "a mere 48 hours of notice to comply" where the serving party "could have notified [the witness] earlier of the need for him to testify"); *Fox v. Traverse City Area Pub. Schools Bd. of Ed.*, No. 1:07-cv-00956, 2009 WL 724001, at *1 (W.D. Mich. Mar. 10, 2009) (holding that "[t]wo business days, more or less, even with the intervening weekend, is not an adequate period of time to comply with a subpoena" and collecting cases); *In re Polyester Staples*, 2007 WL 1232223, at *2 at n.4 (service "a mere four (4) calendar days prior to the deposition date" held to be "unreasonably late notice"); *In re Stratosphere Corp. Securities Litig.*, 183 F.R.D. 684, 687 (D. Nev. 1999) (service of subpoena six days before scheduled deposition was "unreasonably short" notice where the serving party knew the non-party was "contesting any taking of his deposition").

The fact that American had discussed the possibility of deposing Mr. Stow in advance of its final decision to issue the subpoena does not change this. In its initial discussions, American

8

stated that it expected to take Mr. Stow's deposition before the end of January. It did not do so. Once American returned to the notion of possibly deposing him in February, it hesitated in reaching a final decision on whether to do so while it addressed use of the first deposition with Travelport. There is no explanation for why American did not raise or could not have raised this issue with Travelport much earlier. The earliest definitive statement from American that it would, in fact, pursue a subpoena against Mr. Stow did not come until Saturday, February 16.[27] In all practical terms, this is no better than its delivery of the subpoena by e-mail on the 18th, and in any event it falls short of the reasonable period required by Rule 45. *See, e.g., TRI Inv.*, 2011 WL 5330295, at *2; *In re Polyester Staples*, 2007 wl 1232223, at *2 at n.4.

American's woefully short notice period cannot be cured by rescheduling the deposition to a later date. As noted, American has admitted that it does not view the noticed date as operative and that American would be amenable to postponing the deposition.[28] In addition to improperly subjecting Mr. Stow to a second deposition, a deposition after February 20, 2013, would violate the scheduling order in the underlying proceeding.[29] American agreed to that order and has not asked the court to amend it. Furthermore, the Northern District of Texas specifically ordered American to avoid such last-minute issues when it ordered that "Parties *shall* serve discovery requests with sufficient lead time to permit opponents to serve timely responses prior to the discovery deadline."[30]

---

[27] E-mail from Allison Brown, Esq., Weil Gotshal & Manges, to Larry Work-Dembowski, Esq., Cleary Gottlieb Steen & Hamilton LLP (Feb. 16, 2013) (Exhibit K).

[28] *See* Work-Dembowski Declaration ¶ 17.

[29] Order Granting Unopposed Motion to Stay Party Discovery And Extending Current Deadlines And Request For Expedited Treatment ¶ 2(d) (italics added, bold in original) (Exhibit G).

[30] Initial Scheduling Order at n.4 (Exhibit F) (emphasis added).

### III. The Court Should Award Mr. Stow His Attorneys' Fees And Costs

In addition to quashing the subpoena, the Court should award Mr. Stow his attorneys' fees and costs associated with this motion. There is no reasonable basis for this subpoena under Rule 45, as opposing counsel must know from its repeated concession that it was "satisfied" with the testimony from Mr. Stow's first deposition and from its unreasonable decision to wait until hours before the end of the discovery period to issue the subpoena. Rule 45(c)(1) requires a court on whose behalf a subpoena is issued to "enforce" the duty of the party or attorney responsible for the subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." In addition to other penalties, the court may impose attorneys' fees. Fed. R. Civ. P. 45(c)(1). This Court should therefore order American to pay Mr. Stow's attorneys' fees and costs in bringing this motion.

### CONCLUSION

For all of the foregoing reasons, Mr. Stow respectfully requests that the Court grant his motion, quash the subpoena in all respects, and award Mr. Stow his attorneys' fees and costs incurred in connection with this motion.

Dated: February 19, 2013

Respectfully submitted,

*/s/ Kenneth Lautenschlager*
Kenneth Lautenschlager
N.C. State Bar No. 23246
JOHNSTON, ALLISON & HORD, P.A.
1065 East Morehead Street
Charlotte, North Carolina 28204
Telephone: 704/332-1181
Facsimile: 704/376-1628

*/s/ Steven J. Kaiser*
Steven J. Kaiser (SKaiser@cgsh.com)
D.C. Bar No. 454251
Larry C. Work-Dembowski (LWork-Dembowski@cgsh.com)
D.C. Bar No. 486331
Attorneys for non-party John Stow
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
Phone: (202) 974-1500
Fax: (202) 974-1999

10

## LOCAL RULE 7.1(c) CERTIFICATION

I, Larry C. Work-Dembowski, hereby certify that I conferred by telephone with counsel for American Airlines, Inc., in a good faith effort to resolve or narrow the issues presented in this motion prior to filing, and that we were unable to resolve or narrow the issues.

_____
Larry C. Work-Dembowski

11