REDACTED PUBLIC VERSION

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-mc-00014
(N.D. Tx. No. 4:11-cv-244-Y)

| | |
|---|---|
| AMERICAN AIRLINES, INC., <br>       Plaintiff, <br><br> v. <br><br> TRAVELPORT LIMITED, et al., <br>       Defendants. | AMERICAN AIRLINES, INC.'S MEMORANDUM IN OPPOSITION TO JOHN STOW'S MOTION TO QUASH PLAINTIFF'S SUBPOENA AND FOR ATTORNEYS' FEES AND COSTS |

## SUMMARY OF THE ARGUMENT

The Motion of John Stow to Quash American Airlines, Inc.'s Subpoena and for Attorneys' Fees and Costs (the "Motion") should be denied because: (1) the parties have worked out the notice issue raised in Mr. Stow's Motion; and (2) Mr. Stow has failed to establish that he would be unduly burdened by compliance with the deposition subpoena (the "Subpoena").

The discovery deadline in this case has been extended and does not conclude until March 27, 2013—well over a month after American issued the Subpoena. American first requested Mr. Stow's deposition two months ago and has repeatedly offered to reschedule the deposition for a mutually convenient time and place, giving Mr. Stow more than enough notice of American's intent to seek his testimony. American thus unquestionably has attempted to accommodate Mr. Stow's schedule. Today, after numerous attempts to obtain a date that would work for Mr. Stow, counsel for Mr. Stow informed counsel for American that, if ordered for deposition, Mr. Stow could be made available for deposition on March 21. Based on this representation of availability, American will serve an amended deposition notice on Mr. Stow for that date. Accordingly, Mr. Stow's objection on the basis of alleged inadequate notice is moot.

1

Moreover, Mr. Stow cannot meet his burden of demonstrating—*with the evidence required by case law*—undue burden. Without question, Mr. Stow is in possession of relevant and unique testimony. He has never been deposed in this case and cannot rely on a short (less than three hour) deposition in a different case, involving different parties, to prove undue burden, particularly when Mr. Stow has refused to even respond to American's offers to limit the length of the deposition to five hours and to consider limiting the duration even further. American has no other means to secure admissible testimony regarding subjects critical to its claims and about which only Mr. Stow has knowledge.

Finally, Mr. Stow's request for attorneys' fees has no merit. American has made every effort to minimize the burden imposed upon Mr. Stow, including by attempting to seek an agreement from defendants in the Federal Case (defined below) that Mr. Stow's deposition in the State Case (defined below) could be utilized in the Federal Case and by agreeing to limit the duration of the deposition. Mr. Stow's Motion should be denied.

## STATEMENT OF THE FACTS

**A.     The Federal Case.**

This case (the "Federal Case") involves American's attempts to implement new, innovative technology for airline ticket distribution, called "Direct Connect," and the efforts by two monopolists in the travel industry to destroy it. American believes that Mr. Stow is a critical link between the conspirators and thus is an essential witness in this case.

Two competitors—Sabre, Inc., Sabre Holdings Corporation, and Sabre Travel International Ltd. (together, "Sabre") on the one hand and Travelport, LP ("Travelport") on the other—are central to the conspiracy alleged in the Federal Case. These competitors operate global distribution systems ("GDSs"). Under the outdated distribution model that Direct Connect seeks to replace, these GDSs distribute airline fare, flight, and availability information

(provided by American and other airlines) to travel agents, thereby enabling travel agents to make reservations and issue tickets on the airlines' flights. (*See* Second Am. Compl. ¶ 2.) About 95% of travel agents in the United States subscribe to a GDS provided by Travelport or Sabre, and almost every one of them relies on one primary GDS to obtain flight and fare data and to book tickets for corporate customers. (*Id.* ¶¶ 3, 5.)

American is particularly dependent on corporate travelers, who account for a disproportionately high share of American's passenger revenue. (*Id* ¶ 34.) These corporate travelers overwhelmingly purchase air tickets *through travel agencies*. (*Id*.) The GDSs thus control the distribution of airline tickets through travel agents to crucial business travelers. (*Id.* ¶ 1.) As a result, when a GDS charges airlines excessive booking fees, degrades the quality of service (for example, by biasing its displays), or fails to invest in modern technology, American and similarly situated carriers have little ability to shift bookings of corporate travelers to another distribution channel. (*Id.* ¶ 159.) To cement their monopoly, the GDSs include anticompetitive terms in their contracts designed to cut off American's ability to shift bookings to other channels, and then use their monopoly power to charge excessive prices and exclude competition. (*Id.* ¶¶ 54-69, 164.)

### B. Mr. Stow's Relevance to the Claims in the Federal Case.

Mr. Stow is a long-time former employee of Sabre. Following his employment with Sabre, he became a consultant to Sabre. While serving as a paid consultant for Sabre, Mr. Stow communicated with Sabre's direct competitor, Travelport. █████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████. This unique evidence is critical to American's claims in the Federal Case.

### C. Mr. Stow's Short Deposition in the State Case.

Mr. Stow has not been deposed in the Federal Case. However, on May 24, 2012, Mr. Stow was deposed for approximately three hours near his home (in Chapel Hill, North Carolina) as part of a different antitrust lawsuit brought by American against Sabre (not Travelport) in Texas state court (the "State Case"). Mr. Stow provided key testimony about conversations between the GDS competitors regarding how to destroy American's Direct Connect initiative.

American did not cross notice Mr. Stow for deposition in the Federal Case because the two cases were on very different discovery tracks, and, at the time of Mr. Stow's State Case deposition, discovery in the Federal Case was not sufficiently developed to justify a deposition. American has since resolved the State Case and all of its antitrust claims against Sabre. (*See* Ex. B).) But American has not resolved the Federal Case or its claims against Travelport or Orbitz, the two defendants in the Federal Case.[1]

As set forth below, in order to minimize the burden on Mr. Stow, American sought the defendants' agreement that Mr. Stow's deposition in the State Case could be used in the Federal Case, but the defendants refused to agree, thus leaving American with no other choice but to seek Mr. Stow's testimony in this action.

---

[1] While the State Case involving Sabre was proceeding, American attempted to coordinate discovery with the Federal Case involving Travelport. (*See* Ex. C).) Rebuffing American's efforts, Travelport refused to coordinate and participate in discovery in that case. (*See* Ex. D); (*See* Ex. E).)

D.     **American's Efforts to Schedule Mr. Stow's Deposition.**

American has consistently worked to accommodate Mr. Stow's schedule regarding the requested deposition. On December 18, 2012, *two months before it issued the Subpoena*, American informed Mr. Stow's counsel of its intent to seek testimony from Mr. Stow in the Federal Case and requested available dates for a deposition. Mr. Stow's counsel advised that Mr. Stow could not be reached due to the holidays, but that he would take the request under advisement and respond accordingly. (*See* Ex. F).) Shortly thereafter, the court in the Federal Case entered an order granting the parties' joint motion for a stay of party discovery and an extension of deadlines in the Federal Case. (*See* Ex. G).) Not wanting to burden Mr. Stow unnecessarily, even though the stay applied only to party discovery, American did not seek to schedule a deposition of Mr. Stow during the stay.

When the stay expired and it became clear that the parties would not be able to resolve their disputes, American renewed its request. (*See* Ex. H).) However, in another attempt to avoid unnecessarily burdening Mr. Stow, American advised that if the defendants in the Federal Case would agree that Mr. Stow's deposition from the State Case could be utilized in the Federal Case, American would withdraw its request for Mr. Stow's deposition. (*Id.*) On February 12, 2013, American approached the defendants with this request. (*See* Ex. I).) On February 15, 2013, defendants in the Federal Case informed American that they would not consent to the use of Mr. Stow's State Case deposition in the Federal Case, leaving American with no other means to obtain critical, admissible testimony from Mr. Stow but to take his deposition in the Federal Case. (*See* Ex. J).)

On February 19, 2013, after obtaining consent from Mr. Stow's counsel to accept service, American served a deposition notice and subpoena for February 20, 2013 *or a mutually*

*convenient date*. (*See* Ex. K).) American informed Mr. Stow's counsel that it would "work with [Mr. Stow's counsel] to accommodate Mr. Stow's schedule and preferred location." (*Id.*) At the time, the parties to this Federal Case were in the process of negotiating an agreement to seek an extension of the fact discovery deadline, which has since been extended until March 27, 2013. (*See* Ex. L).) Despite having agreed to accept service of the Subpoena, and purporting to cooperate with American regarding scheduling of the deposition, on February 19, 2013, Mr. Stow's counsel informed American for the first time that he would move to quash the Subpoena, which he did the same day.

American remains committed to reducing any burden on Mr. Stow by accommodating his schedule and preferred location for the deposition and will shortly issue an amended notice and subpoena for March 21, 2013, the date on which Mr. Stow today stated he is available for deposition. Additionally, American has voluntarily offered to limit the deposition to five hours. (*See* Ex. M).)

## ARGUMENT AND AUTHORITIES

Mr. Stow makes two arguments in support of his Motion to Quash: (1) that the Subpoena did not provide him with adequate notice; and (2) that he is unduly burdened by having to sit for a deposition in the Federal Case when he already sat for a short deposition (approximately three hours) in the State Case. (*See* Mot. at 5 - 9.) Mr. Stow's first argument is mooted by American's service of an amended notice for the date and time on which Mr. Stow represented he is available. Mr. Stow's second "undue burden" argument fails as well. Mr. Stow has not (and, particularly given American's willingness to limit the duration of his deposition, cannot) demonstrate through *specific* evidence that the time or expense associated with sitting for five hours of deposition is "unreasonable and oppressive." *See Hardin v. Belmont Textile Mach. Co.*, No. 3:05CV492, 2007 WL 2300795, at *4 (W.D.N.C. Aug. 7, 2007) (party seeking to quash a

subpoena "bears a heavy burden to show that compliance with the subpoena would be unreasonable and oppressive").

### A. Mr. Stow's "Undue Burden" Argument Fails.

Mr. Stow contends that he should be excused from sitting for a deposition in the Federal Case because he sat for less than three hours of deposition in the State Case. In support of his argument, he cites only one case, *In re Polyester Staple Antitrust Litigation,* No. 3:03 CV1516, 2007 WL 1232223 (W.D.N.C. Apr. 25, 2007). Mr. Stow's reliance on *In re Polyester* is misplaced. The Western District's decision in that case addressed whether to allow a *third* deposition *in the same case* of a witness on a topic that had already been fully covered in two depositions that were attended by *all parties*. *See id.* at *2. The facts of *In re Polyester* are inapposite to this case and Mr. Stow recognizes as much in his Motion. (*See* Mot. at 7 (noting that "[r]ule 30's proscription against second depositions without leave of court"—the subject of *In re Polyester* —"is not directly in play here . . . ").) Here, unlike in *In re Polyester*, American has not previously deposed Mr. Stow regarding claims in this case, neither of the defendants in the Federal Case were parties to the State Case, and defendants have objected to the use of Mr. Stow's State Case deposition in this Federal Case.

Furthermore, American is not, as Mr. Stow suggests, seeking to repeat his State Case deposition. All of the exhibits used at the State Case deposition were produced by Sabre, its travel agencies, or Mr. Stow himself. Not one document used at Mr. Stow's deposition was produced by the defendants in the Federal Case. Nearly all of the questioning at Mr. Stow's short deposition concerned matters specific to Sabre, the only defendant in the State Case. Only one exhibit concerned Mr. Stow's correspondence with Travelport, largely because at the time of Mr. Stow's State Case deposition, discovery was not yet developed in the Federal Case.

Mr. Stow's argument that American should have cross noticed Mr. Stow's State Case deposition with this Federal Case ignores the very different discovery schedules in these cases. At the time of Mr. Stow's State Case deposition, discovery was nearly complete in the State Case, while it had only just begun in the Federal Case, with the majority of the documents from the defendants in the Federal Case yet to be produced. Since the time of Mr. Stow's deposition in the State Case, the defendants in the Federal Case have been ordered to produce thousands of pages of documents from a number of different custodians. (*See* Ex. N).) Additionally, since the time of Mr. Stow's deposition in the State Case, twenty-three depositions have been conducted in the Federal Case. This discovery has created new issues in an entirely different case that American is entitled to address with Mr. Stow. The fact that Mr. Stow may be required to address certain questions that may have been previously addressed in the State Case does not, as a matter of law, render his compliance with the Subpoena unduly burdensome. *See Fleetwood Transp. Corp. v. Packaging Corp. of Am.*, No. 1:10MC58, 2011 WL 6217061, at *8 (M.D.N.C. Dec. 14, 2011) (holding witness's prior four-day deposition in a state case did not establish an undue burden preventing his subsequent deposition in a federal case, even when all parties had stipulated that the prior state deposition could be used in any manner in the federal action).

Mr. Stow asserts no other reason why he would be burdened by a deposition in this case. Motions that rely on unsubstantiated allegations that compliance will impose an undue burden are invalid. *See Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 241 (M.D.N.C. 2010) (recognizing that "boilerplate" objections to discovery requests, including those that assert a request is unduly burdensome, are invalid); *see also Am. Sec. Ins. Co. v. McDonald*, No. 507-MC-5, 2007 WL 1853857, at *1 (W.D.N.C. Jun. 26, 2007) (denying motion to quash where movant non-party deponents did not satisfy their burden to show that compliance with the

subpoenas would be unduly burdensome). Mr. Stow makes no effort to quantify the time or expense that he will incur as a result of his compliance with the Subpoena. (*See generally* Mot.) He does not present any evidence that compliance with the Subpoena will divert him from profitable endeavors or force him to incur unreasonable expenses. (*Id.*) Importantly, American tried to avoid the need for his deposition entirely, but the defendants refused to consent to the use of Mr. Stow's deposition from the State Case in this Federal Case. In all likelihood, Mr. Stow has expended more time and resources on his attempt to quash the Subpoena than he would have if he had simply complied. *See, e.g.*, *Demers v. LaMontagne*, No. 98-10762, 1999 WL 1627978, at *2 (D. Mass. May 5, 1999) (denying motion to quash because in light of the costs incurred by nonparty fighting the subpoena, cost of compliance was minimal).

While Mr. Stow's attendance at a deposition at a time and location of his choice will no doubt entail some inconvenience, that hardship is not sufficient to justify depriving American of critical evidence and does not meet the standard required by the Federal Rules to quash a subpoena. Accordingly, his Motion should be denied.

### B. Mr. Stow's Request for Attorneys' Fees Is Without Merit.

Mr. Stow makes a conclusory argument that he is entitled to attorneys' fees and costs associated with bringing his Motion because there is no reasonable basis for the Subpoena. (*See* Mot. at 10.) The request for fees and costs has no legal support. Under the Federal Rules, attorneys' fees are available only if the party serving the subpoena does not take "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1). Attorneys' fees are inappropriate where there is no undue burden, defect in the subpoena, or bad faith by the party requesting the subpoena. *See Mount Hope Church v. Bash BackA*, 705 F.3d 418 (9th Cir. 2012). Furthermore, attorneys' fees under Rule 45(c)(1) are

9

generally awarded "only in the most egregious of situations . . . ." *See Tattle Tale Portable Alarm Sys., Inc. v. Calfee, Halter & Griswold, LLP*, No. 11-7013, 2012 WL 1191214, at *6 (D.N.J. Apr. 10, 2012) (internal citations omitted).

Far from bad faith, American has been reasonable and has made every effort to minimize the burden on Mr. Stow. American offered to defer to Mr. Stow's preferred deposition date and location (Ex. F); maintained this offer when it issued the Subpoena (Ex. K); and, even after the Motion was filed, approached Mr. Stow's counsel to schedule a mutually convenient date (Ex. O). Moreover, American sought to secure Travelport's agreement that Mr. Stow's deposition from the State Case could be used in the Federal Case. (*See* Ex. I).) Travelport refused to agree. (*See* Ex. J).) Because of that refusal was American left with no choice but to seek Mr. Stow's deposition in this Federal Case. And, even then, American has voluntarily offered to limit its deposition of Mr. Stow to five hours. (*See* Ex. M).) *Mr. Stow has made absolutely no effort to even respond to American*. In sum, there simply is no basis to punish American through the imposition of attorneys' fees and costs for making efforts to obtain necessary testimony.

## CONCLUSION AND REQUESTED RELIEF

American respectfully requests that this Court deny John Stow's Motion to Quash Plaintiff's Subpoena and for Attorneys' Fees and Costs, and that it grant American any further relief to which it is justly entitled. Mr. Stow is at the center of an unlawful conspiracy; his deposition is necessary; and American has attempted in good faith to minimize any burden caused by a deposition.

Respectfully submitted, this the 7th day of March 2013.

      TROUTMAN SANDERS LLP

      By: /s/ Gary S. Parsons
        Gary S. Parsons
      N.C. State Bar No. 7955
        D. Martin Warf
      N.C. State Bar No. 32982
      Post Office Drawer 1389
      Raleigh, North Carolina 27602
      Telephone: (919) 835-4110
      Facsimile: (919) 829-8713
      gary.parsons@troutmansanders.com
      martin.warf@troutmansanders.com
      **LR 83.1 Counsel**

        Yolanda Cornejo Garcia
      State Bar No. 24012457
      yolanda.garcia@weil.com
        Michelle Hartmann
      State Bar No. 24032401
      michelle.hartmann@weil.com
      WEIL, GOTSHAL & MANGES LLP
      200 Crescent Court, Suite 300
      Dallas, Texas 75201-6950
      214.746.7700
      214.746.7777 (fax)

        R. Paul Yetter
      State Bar No. 22154200
      pyetter@yettercoleman.com
      YETTER COLEMAN LLP
      909 Fannin, Suite 3600
      Houston, Texas 77010
      713.632.8000
      713.632.8002 (fax)

        Bill F. Bogle
      State Bar No. 02561000
      bbogle@hfblaw.com
        Roland K. Johnson
      State Bar No. 00000084
      rolandjohnson@hfblaw.com
      HARRIS, FINLEY & BOGLE, P.C.
      777 Main Street, Suite 3600

Fort Worth, Texas 76102
817.870.8700
817.332.6121 (fax)

Richard A. Rothman
Richard.rothman@weil.com
James W. Quinn
james.quinn@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
212.310.8426
212.310.8285 (fax)

MJ Moltenbrey
mjmoltenbrey@paulhastings.com
Paul Hastings LLP
875 15th Street, N.W.
Washington, DC 20005
(202) 551-1725
(202) 551-0225 (Fax)

*Attorneys for American Airlines*

# CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system that will send notification of such filing to the following:

Kenneth Lautenschlager
Johnston, Allison & Hord, P.A.
1065 E. Morehead Street
Charlotte, NC 28204
704-332-1181
Fax: 704-376-1628
klautenschlager@jahlaw.com

Larry C. Work-Dembowski
Cleary Gottlieb Steen and Hamilton LLP
2000 Pennsylvania Ave NW
Washington, DC 20006
202-974-1588
Fax: 202-974-1999
lwork-dembowski@cgsh.com

Steven J. Kaiser
Cleary Gottlieb Steen and Hamilton LLP
2000 Pennsylvania Ave NW
Washington, DC 20006
202-974-1554
Fax: 202-974-1999
skaiser@cgsh.com

Respectfully Submitted,

TROUTMAN SANDERS LLP

By: /s/ Gary S. Parsons
    Gary S. Parsons
N.C. State Bar No. 7955
Post Office Drawer 1389
Raleigh, North Carolina 27602
Telephone: (919) 835-4110
Facsimile: (919) 829-8713
gary.parsons@troutmansanders.com